

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. AP-77,043 & AP-77,044

### THE STATE OF TEXAS

### v.

### LARRY RAY SWEARINGEN, Appellee

### ON DIRECT APPEAL
### IN CAUSE NO. 99-11-06435-CR FROM THE 9TH DISTRICT COURT
### OF MONTGOMERY COUNTY

**YEARY, J., filed a concurring and dissenting opinion in which NEWELL, J., joined.**

### CONCURRING AND DISSENTING OPINION

#### I.

I join Part II.B. of the Court's opinion disposing of cause number AP-77,044.

#### II.

I write separately to express why I believe the Court ought to affirm the trial court's

order granting DNA testing, in cause number AP-77,043, at least in part.

## A. The Ligature, Cigarette Butts, and Victim's Clothing

With respect to much of the evidence that the convicting court has now ordered that testing be done (victim's clothing, cigarette butts, ligature), we have already held—in some cases, twice—that Appellee failed to show the existence of biological materials on these particular items. *State v. Swearingen*, 424 S.W.3d 32, 37-38 (Tex. Crim. App. 2014); *Swearingen v. State*, 303 S.W.3d 728, 732-33 (Tex. Crim. App. 2010). Finding no "change in the law, facts, or circumstances since our 2014 opinion[,]" Majority Opinion at 8, the Court continues to reject Appellee's request to test those items for the same reason. Judge Alcala believes that there *has* been a change in the facts that would preclude applicability of the law of the case doctrine, namely, DNA analyst Huma Nasir's revised opinion. Dissenting Opinion at 9-10. Nasir now explains that, when she said "likely" in her earlier affidavit, she actually meant "at least more likely than not[.]" *Id*. at 10. She then somehow translates "more likely than not" into "a reasonable degree of scientific *certainty* that biological material *is present*[.]" *Id*. (emphasis supplied.) In *State v. Swearingen*, we made it clear as a matter of law that "merely probable" is not sufficient. 424 S.W.3d at 38. In common parlance, "more likely than not" is the same as "probable." I cannot blame the Court for rejecting the notion that "probable" may reasonably be regarded as equating with "a reasonable degree of scientific certainty." Like the Court, I see no change in the law or facts to preclude our application of the law of the case doctrine. Majority Opinion at 8.

**B. Fingernail Scrapings, Rape Kit, and Hairs**

With respect to the fingernail scrapings, the Court today also relies on the law of the case doctrine, but this time to hold that Appellee cannot establish a *different* prerequisite to DNA testing. Majority Opinion at 7-8. In *State v. Swearingen*, we held that, even assuming such testing would turn up DNA from a third party, not Appellee's, such exculpatory evidence would not "overcome the 'mountain of evidence' of [Appellee's] guilt." 424 S.W.3d at 38 (quoting *Swearingen v. State*, 303 S.W.3d at 736). Hence, he cannot establish by a preponderance of the evidence that he would not have been convicted had the fingernail scrapings contained a third party's DNA. The Court reiterates that holding today.

Beyond this, however, the Court today does not purport to rely on the law of the case doctrine. Regarding Appellee's request for DNA testing of several new items, namely, the rape kit and certain hairs, the Court seems willing to assume that these do contain biological material and does not reject Appellee's request for testing on that account. Instead, in an altogether new holding, the Court concludes that, as with new DNA testing of the fingernail scrapings, current testing of the rape kit and hairs, even if it revealed third-party DNA, would not serve to refute the "mountain of evidence" pointing to Appellee's guilt. "Once again," the Court concludes, in an original holding that does not rely upon law of the case, Appellee "cannot establish by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing." Majority Opinion at 10.

I agree with Judge Alcala that both the hair and the rape kit contain biological material

in contemplation of Article 64.01(a)(1). TEX. CODE CRIM. PROC. art. 64.01(a)(1). Dissenting Opinion at 11-12. "Hair" is expressly listed in the statute as it presently reads, and a rape kit will inevitably contain, if not "semen," then at least some type of "bodily fluid," even if only the victim's. But in making any assessment as to whether exculpatory DNA results would likely change a jury's verdict, the Court should measure the "mountain of evidence" inculpating Appellee against presumptively favorable test results for *all* of the evidence for which biological material has been shown to be present: the rape kit, the hairs, *and the fingernail scrapings*. The Court should not rely on law of the case in this piecemeal fashion to first reject DNA testing of the fingernail scrapings, and then later to reject DNA testing of the rape kit and hairs without factoring in the fingernail scrapings. Instead, I would have the Court measure the mountain of evidence against the exculpatory inferences that would flow from DNA testing that would presumptively show third party DNA on *all three* of these sources, considered together.

I am not unmindful of decisions from this Court that have refused DNA testing under circumstances in which such testing might reveal no more than the presence of an *accomplice* without also ruling out the defendant's participation as either principal actor or party. *See, e.g.*, *Wilson v. State*, 185 S.W.3d 481, 485 (Tex. Crim. App. 2006) ("[I]f new, more discriminating DNA testing showed that another perpetrator was involved, that finding would not exonerate appellant because it would show nothing more than there was another party to the crime, at best."). But, I believe that if DNA testing all three of these items had

demonstrated third-party DNA—and especially had it revealed the presence of DNA from the *same* third party in all three of these items, and none of Appellee's DNA—some rational juror might readily have harbored a reasonable doubt with respect to whether Appellee had any role in Trotter's abduction, sexual assault, and murder.[1] *Cf. Routier v. State*, 273 S.W.3d 241, 259 (Tex. Crim. App. 2008) ("In our estimation, DNA evidence showing that an unknown intruder—indeed, the same unknown intruder—had left blood on the night shirt and the door from the utility room to the garage, along with a facial hair and a pubic hair, would more likely than not have caused the jury to harbor a reasonable doubt as to the appellant's guilt and decline to convict her."). At the very least, we should defer to the convicting court's judgment to that effect.

For these reasons, I ultimately dissent to the Court's disposition of cause number AP-77,043.

FILED:     October 28, 2015
PUBLISH

---

[1] Applicant is entitled to DNA testing if he can demonstrate "by a preponderance of the evidence" that, among other things, "he would not have been convicted if exculpatory results had been obtained" through that testing. TEX. CODE CRIM. PROC. art. 64.03(a)(2)(A). If at least one rational juror would likely have harbored a reasonable doubt, Applicant would not have been convicted.